The last case on this morning's docket is the case of people at the State of Illinois v. Tonya Day, and the appellant has waived, and we have Mr. Harnes. Harris, I'm sorry. Harris, okay. Thank you. You're here for the appellate, so you may proceed with your argument. Yes, Your Honor. I'm Assistant Defender Levi Harris, and my client is Tonya Day. As you said, we're the appellate. We're here asking the court to affirm the trial court's order suppressing statements that my client made to a deputy in a police station where Ms. Day's Miranda waiver was not knowing or intelligent, and her statements were thus involuntary. I want to address four points this morning very quickly. First, I want to talk about the trial court's order itself, which explains very well its factual findings and legal conclusions. Second, I want to talk about the standard of review, which is manifest error. Third, I want to talk about the facts that support the court's findings. And fourth, very briefly, if we have time, I want to talk about the reasons that the state's policy arguments in this brief don't really apply here. So first, the court's order. The court held a hearing, heard evidence, testimony, heard argument from the parties, and the trial court suppressed the statements that my client made to Deputy Brian Littrell at a police station. The court, in its written order, said that my client appeared to be significantly impaired based on the officer's own observations, including field sobriety tests and the preliminary breath test result, which was .184, and as admitted by my client herself in her testimony. There was testimony that she appeared to have difficulty comprehending and answering questions after Miranda. So, the court said, the court finds it has insufficient information to find that Ms. Day knowingly and intelligently understood and voluntarily waived her Miranda rights because of extreme intoxication. And thus, the statements that were enlisted at the jail after Miranda, although mostly cumulative to other statements made at the scene before she was arrested, were suppressed. So, in other words, the court found that the evidence supported the finding that my client was grossly intoxicated and the state had failed to demonstrate, as it had the burden to do at that point, that the client's waiver was knowing and intelligent and that the statements themselves were voluntary. Don't you think it would have been a good idea for somebody to include the Miranda warning in the record? I mean, maybe that's why the state didn't show up. I mean, we don't have it. Could be, Your Honor. Hadn't thought about that. Maybe that's a good question. Maybe everybody just assumes that we know what's going on and we have testimony that he gave her the Miranda, that she signed a waiver. No, but we just, I mean, we have the judge's findings, which are pretty good, but no documents, no document. The most important document is not in the record. Well, Your Honor, in this case. I'm not, I'm just, I mean, I'm just making a statement for the record. You know, it would be really nice if the issue that's before the court, at least partly before the court, has all of the information available. So, for example, having some familiarity with Miranda warnings, usually there's some signing that's going on and maybe some notations by the officer that we don't get to see. Well, Your Honor, maybe that's something that can be addressed when this case is remanded, hopefully with an affirmance here, but whichever way it's going back to the trial court, so maybe that document can be. Well, if it's affirmed, we won't see it again. It's not necessary that maybe perhaps that we do, but I'm just, think about that in the future if you would. Yes. So we talked about the court's order. I want to talk about the standard of review, which I'm sure the court is aware for the factual findings, the standard of review is manifest way to the evidence. The findings are only against the manifest way to the evidence if the findings are, if the opposite conclusion is clearly evident from the facts of the record or if the finding itself is somehow unreasonable or arbitrary. This deferential standard also applies to the finding itself of whether a Miranda waiver is known to be intelligent. Now, the ultimate legal conclusion of whether this evidence had to be suppressed is reviewed de novo, but I don't think even the state contested if the facts are, as the court found them to be, the legal conclusion that would follow would be suppression. So we're here arguing about whether or not these facts are against the manifest way to the evidence. This court would somehow have to find that the findings that the court made, well supported by its own argument, were somehow unreasonable, arbitrary, or not based in the evidence. So what evidence was there, third, that supported the court's findings beyond a few things that it touched on? Ms. Day, in her testimony, testified that she didn't remember the deputy asking her questions, she didn't remember making statements to him. But more significantly, I don't know that I've ever seen this, not that that matters, but the deputy, the state's own witness, testified extensively to my client's impairment. Talked about her bloodshot eyes, odor of alcohol, difficulty keeping her balance. She was laughing and crying at the same time. She failed all three of the tests, the nystagmus test and the walk and turn test and all of that. She had a .184 on his preliminary breath test. And the thing that I found shocking was that the deputy himself testified that she was still having difficulty understanding him when he read her the Miranda. So in his zeal to prove to the court that she was under the influence because she didn't do the breathalyzer, he shot himself in the butt. Well, Your Honor, I don't want to speculate about anybody's motivations, but it's certainly the case that the state had different burdens for different portions of this proceeding. That here she was drunk, but not too drunk, and then she was really drunk if they got to the point that they were drunk. But the court could properly consider that she had a pretty good memory regarding the whole narrative of the sequence of events and who was where when. Well, Your Honor, often the standard is the totality of the circumstances. So I think anything that the court could look at would be well within its rights to do. The state talked extensively about the things that Ms. States testified to remembering at this hearing. She gets up there and she has a pretty solid memory, seems to have a solid memory of things that happened that night other than a few things. What the state doesn't say is how that – I mean, there's no evidence in case law or in some psychological studies, neurological studies that, well, if you remember things, you weren't that grossly intoxicated. Fortunately, it's been a long time since I've had any kind of experience with this, but I have a lot of unfortunate memories from college that I wish I didn't have that I don't know that necessarily arose from not gross intoxication. So I don't think there's a compelling argument that just because these facts were there, that somehow arose the validity of the court's argument. We're a little diverse of record there. We are, Your Honor, we are. My apologies for that. Just strike that and please don't consider it. The statute is run. Yes, the statute is run. Thank God. Fourth and finally, I want to talk briefly about the state's policy arguments. I think we would all agree we don't want drunken driving. We've all suffered ill effects, friends and family members from that. That's not what we're here to talk about. The Fifth Amendment doesn't permit the introduction of involuntary statements every time public policy frowns on conduct. In fact, the only time we're talking about Miranda is when we have criminal conduct that obviously the legislature has passed on and says we frown on this conduct. We're criminalizing it. But as we say in our brief, there are different standards of constitutional protection for different crimes. The state also seems like it wants to talk about applying this only to the grossest intoxication, like there's some kind of a gross, gross, or grossest spectrum that should apply when we're talking about the Miranda voluntariness. And I just don't think there's any support for that in any of the case law. So in conclusion, we talked about the court's order, which I believe is very clear. We talked about the standard of review, which for the factual findings is what we're here disputing, is very deferential. We talked about the testimony in the record, particularly the testimony from the state's witness that supports the trial court's findings and then the fact that the state's public policy arguments, you know, well-meaning, I'm sure, don't really apply here. So if the court doesn't have any other questions, we would just leave you with the strong plea to affirm the trial court's order. And we thank you. Thank you, Mr. Harris, for your brief and your argument. And we'll take them at it under advisement. At this time, we stand in recess until 1 o'clock for lunch. Thank you.